fraud or mistake, but there was a sufficient plea of duress to require the reception of the evidence offered tending to show duress in procuring the account stated.

[9] There is no force in the contention that defendant is precluded from questioning the account stated by subsequently promising to pay it, and by not repudiating it during the period of some 15 months before the action was brought.

These views are also applicable to the second account stated, for part of it was for services rendered, disbursements, and advances made while defendant was incompetent, and the account stated did not show what part was for such services and advances.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to ·abiue the event. All concur.

---

STEVENS v. VAN WAGONER–LINN CONST. CO.    (No. 6491.)

(Supreme Court, Appellate Division, First Department. December 11, 1914.)

1. MASTER AND SERVANT (§ 70*)—CONSTRUCTION OF CONTRACT—COMPENSATION.

    A contract by which a party, engaged in manufacturing and installing electrical equipment and supplies, employed plaintiff to solicit business for it on commission, provided that, on account of plaintiff's relations with certain contractors, architects, and engineers named in an annexed schedule, he was to receive commissions on work done for them or their principals, that solicitation of work from them should exclusively belong to him, provided a slip was signed for each job by the company, and that the commissions claimed should be specified in a written notification at the time of the report. The parties had practically construed the contract as requiring plaintiff, when he obtained the consent of architects or others to receive bids or proposals from defendant, to turn in a memorandum relative thereto. The contract further provided that he should also be entitled to commission where he obtained permission to bid from parties not mentioned in the schedule and a report of obtaining permission, provided slip was signed for each job, that the names of such parties should then be added to the schedule, that the company would account to him for all business transacted, and that one-third his commissions should be payable upon the making of each contract and the rest from payments received. *Held* that, while plaintiff was to have commissions on all work done for the parties named in the schedule, it was contemplated that, by the presentation of the slip notification, defendant would be advised that plaintiff was to claim commissions, so that it could be guided thereby in making its bid, and, if this was not done, defendant was at liberty to present bids to undisclosed principals of those named in the schedule free from any claim by plaintiff to commissions.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82–86; Dec. Dig. § 70.*]

2. JUDGMENT (§ 101*)—DEFAULT JUDGMENT—CONFORMITY TO PLEADINGS.

    In an action in which plaintiff alleged that he had solicited business under such contract and had performed all the conditions of the agreement, and that defendant had transacted the business solicited, but after demand had failed to account to plaintiff, and prayed for judgment that defendant account, and that it be adjudged that it pay plaintiff such sum as might be due, an interlocutory judgment requiring an accounting as to business solicited by plaintiff, or transacted with parties named in the schedule, or their principals, without limiting the accounting to business

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with respect to which reports or slips were presented and defendant's acceptance procured, should be construed in connection with the complaint and contract as requiring an accounting under the contract, and did not violate Code Civ. Proc. § 1207, providing that, where there is no answer, the judgment shall not be more favorable to plaintiff than that demanded in the complaint.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 168–170; Dec. Dig. § 101.*]

3. MASTER AND SERVANT (§ 70*)—WAGES—AMOUNT—ACTIONS—ISSUES AND PROOF.

Where plaintiff, in an action for an accounting and to recover the amount found to be due him under such contract, alleged full performance by him of the conditions and covenants of the agreement, he could recover only on the basis of performance, and, where the signing of a slip was required by the contract, could not recover without showing that he procured one to be signed, since, while he would have a right to recover if he were entitled to have a slip signed and defendant unreasonably refused to sign it, or if defendant waived the signing thereof, he could not recover without both alleging and proving these facts.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82–86; Dec. Dig. § 70.*]

4. MASTER AND SERVANT (§ 81*)—ACTIONS FOR COMPENSATION—COMPLAINT.

In an action on such contract a complaint alleging that plaintiff solicited and procured business for defendant, that defendant had transacted the business and received moneys therefor, upon which plaintiff was entitled to commissions, but had failed to account to plaintiff therefor, and demanding that defendant account, and that plaintiff have judgment for the sum found due, stated a cause of action, as it showed that some commissions had been earned, and that defendant had failed to account, and was therefore guilty of a breach of contract, entitling plaintiff at least to nominal damages.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 81.*]

5. JUDGMENT (§ 101*)—DEFAULT JUDGMENT—CONFORMITY TO PLEADINGS.

In an action on such contract, in which it was alleged that plaintiff had solicited and procured business which defendant had transacted, but for which it had failed to account to plaintiff, and judgment was demanded that defendant account, and that it be adjudged that defendant pay to plaintiff such sum as might be due, a recovery of the commissions to which plaintiff was entitled would not violate Code Civ. Proc. § 1207, as the judgment demanded was for the amount due, to be ascertained in accordance with the provisions of the contract.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 168–170; Dec. Dig. § 101.*]

6. MASTER AND SERVANT (§ 81*)—COMPENSATION—ACTIONS FOR ACCOUNTING.

In an action on a contract, where defendant allowed judgment requiring it to account to go against it by default, it could not be heard to claim that plaintiff was not entitled to an accounting, which it by the contract expressly stipulated to give him.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 81.*]

7. MASTER AND SERVANT (§ 70*)—CONSTRUCTION OF CONTRACT—COMPENSATION.

Where plaintiff made a report stating the commissions on work let to parties named in the schedule, or parties whose names he was entitled to have added thereto, and procured defendant's acceptance thereof, it was not necessary, to entitle him to commissions, that he should have negotiated the contracts; and where he negotiated contracts he was entitled to commissions, without procuring the signing of a slip.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82–86; Dec. Dig. § 70.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. MASTER AND SERVANT (§ 70*)—CONSTRUCTION OF CONTRACT—COMPENSATION.
   Where, after plaintiff procured defendant to accept conditionally a slip claiming commissions, he procured defendant to sign another slip for the same work without limitation, without disclosing to defendant his purpose to remove the limitation, defendant could not be regarded as having made the acceptance without limitation.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82–86; Dec. Dig. § 70.*]

9. MASTER AND SERVANT (§ 70*)—CONSTRUCTION OF CONTRACT—COMPENSATION.
   Plaintiff was not entitled to commissions, where defendant let work through a contractor whose name was not on the schedule, though the work was for an owner employing an architect named in the schedule; neither the architect nor the owner having any part in letting the work.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82–86; Dec. Dig. § 70.*]

10. MASTER AND SERVANT (§ 70*)—CONSTRUCTION OF CONTRACT—COMPENSATION.
    Plaintiff was not entitled to have added to the schedule the names of architects or contractors through whom he had procured business prior to the execution of the contract, but whose names were not on the schedule.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 82–86; Dec. Dig. § 70.*]

Appeal from Judgment on Report of Referee.

Action by Lloyd Stevens against the Van Wagoner-Linn Construction Company. From a final judgment for plaintiff, entered upon the confirmation of the report of a referee appointed to take and state the account of defendant, pursuant to an interlocutory judgment, defendant appeals. Reversed, and new trial ordered, unless plaintiff stipulates to reduce the recovery.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Wilbur F. Earp and Franz Neilson, both of New York City, for appellant.

George E. Blackwell, of New York City, for respondent.

LAUGHLIN, J. The defendant manufactured, sold, and installed electrical equipment and supplies; and the plaintiff was engaged, on a commission basis, in soliciting, for such manufacturers, contracts for the sale and installation of electrical apparatus and appliances.

[1] This is an action on a contract in writing, made on the 17th day of July, 1907, by which the defendant employed the plaintiff to solicit business for it, and it agreed to pay him "not less than 2 nor more than 5 per cent. of the money received" by defendant "for the business procured by him," with certain exceptions not material to the questions presented for decision. He had had business relations with the defendant, and the firm of which it was the successor, for many years prior to that time. The contract was prepared by the parties without the aid of legal advice, and in some respects is quite indefinite; but in the light of their prior business relations it may be understood and given effect. A schedule, marked "S," was annexed to the contract, and it contained names of construction contractors, architects, and en-

gineers from whom the plaintiff had procured business for the defendant or others, so that they were regarded as his customers; and the contract provides that, on account of his relations with them, he was to receive commissions upon any work done by the defendant for them or their principals, and that solicitation of work from them "shall exclusively belong to him, provided slip is signed for each job by the company." It was further provided that the commissions claimed by plaintiff within the limits prescribed should be specified in "a written notification at the time of the report."

It is evident, from the course of business between the parties, and from their practical construction of the contract, that they contemplated that whenever the plaintiff obtained the consent of architects. engineers, or others having charge of the letting of work, to receive bids or proposals from the defendant, he should turn in a memorandum in writing, specifying the location of the work and the name of the owner, or contractor, or architect, or engineer, or other person who was to receive proposals, and the percentage to be paid to him, which the contract provided should "be determined" by him in such written notification. It is manifest, therefore, that while the defendant agreed that the plaintiff should have commissions on all work done for or through the parties named in Schedule S, it was contemplated that, by the presentation, acceptance, and signing of such slip notification in advance, the defendant would know that the plaintiff was to claim commissions, and could be guided thereby in making its bid or proposal; and if that was not done the defendant was to be at liberty to present bids or proposals even to undisclosed principals of those named in Schedule S free from any claim by the plaintiff under his contract with it. The contract further provided with respect to commissions to the plaintiff as follows:

"He shall also be entitled to commission in cases where he obtains permission to bid or estimate from parties not mentioned in schedule, and a report of obtaining permission followed by a request to estimate make him so entitled. provided slip is signed for each job by the company. After such report, all further communications from such parties shall be turned over to him for attention, and the names of such parties shall be placed on Schedule S with like effect as if they had been there before. As heretofore, the written acceptance of the company of reports made by said Stevens shall be final that he is entitled to commission in that case."

It was further expressly provided in the contract that "upon demand the company will account to said Stevens for all business transacted and referred to in this agreement." And it was also provided that the commissions should be payable, one-third upon the making of each contract, one-third upon the receipt of the first payment, and one-third upon final payment, and that the first two payments should be based on the estimate and price, and that if such estimate should be less the actual amount received, including extra work, the percentage on the excess should be paid with the final payment. With respect to the period the contract was to run, it was provided that it should continue in force until after written notice by either party to the other.

[2] The plaintiff alleges that he solicited and procured business for the defendant pursuant to the contract from the 17th day of July, 1907,

to the 17th day of November, 1911, and "has performed all the conditions and covenants of said agreement on his part to be performed," and that the defendant transacted the business and received moneys therefor, upon which he is entitled, "pursuant to the provisions of the said agreement," to commissions, and that it has, after demand duly made, refused and neglected to account to him therefor. The judgment demanded is that defendant account, pursuant to the provisions of the contract, for the business procured by the plaintiff, and for moneys received by it from such business, and that it be adjudged and decreed that the defendant pay to the plaintiff such sum as may be due under and by virtue of the contract.

There was no appearance by the defendant in the action until after the entry of the interlocutory judgment, when it appeared by counsel on the accounting before the referee. On the motion for the confirmation of the report of the referee, counsel for defendant moved to vacate the interlocutory judgment and all proceedings taken thereunder, on the ground that the complaint fails to show facts entitling the plaintiff to an accounting, or sufficient to constitute a cause of action, and upon the further ground that the interlocutory judgment is irregular and of no legal effect, in that it grants plaintiff relief not demanded in the complaint. The motion was denied, and the making of the motion is recited in the final judgment. The defendant regarded the final judgment as overruling its motion to vacate the interlocutory judgment, and states in its notice of appeal that it appeals therefrom.

It is argued on the appeal in behalf of the defendant that the interlocutory and final judgments are void, for the reason that the plaintiff failed to show a cause of action for an accounting, or any cause of action, and on the ground that the interlocutory judgment, which was entered by default, contravenes the provisions of section 1207 of the Code of Civil Procedure, in that it is more favorable than was prayed for in the complaint. The last contention is made on the assumption that the interlocutory judgment does not limit the accounting to the demand in the complaint or confine it to the contract. It requires an accounting for all moneys received by the defendant on business transacted by it "and referred to in the agreement of July 17, 1907," between that date and November 17, 1911, "with persons whose business was solicited" by the plaintiff, or was transacted with any of the parties named in  Schedule S, or their principals, or with parties not named in Schedule S "in cases where plaintiff obtained permission to bid or estimate upon work, which estimate was made," without limiting the accounting by the provisions of the contract with respect to the written reports or slips, and the acceptance thereof, or limiting it to the business procured by the plaintiff. I am of opinion, however, that the interlocutory judgment is to be construed in connection with the complaint and contract, and that, as so construed, it required an accounting pursuant to the provisions of the contract, and therefore does not entitle the plaintiff to recover in disregard of any express provisions of the contract.

[3] Under the complaint, however, the plaintiff is limited to a recovery on the basis of performance of and compliance with all the provisions and conditions of the contract for he alleges performance.

Where, therefore, the signing of a slip was required of the defendant by the contract, the plaintiff cannot recover without showing that he ·procured one to be signed. Doubtless he would have a right to recover, if he were entitled to have a slip signed and the defendant unreasonably refused to sign it, or if the defendant waived the signing thereof; but it would be necessary for him both to allege and prove those facts. Weeks v. O'Brien, 141 N. Y. 199, 36 N. E. 185; Granger Co. v. B. & K. Iron Works, 204 N. Y. 218, 97 N. E. 523; Smith v. Wetmore, 167 N. Y. 234, 60 N. E. 419.

[4-6] It is also quite clear that the complaint states a cause of action. It shows that some commissions have been earned by the plaintiff, and that the defendant has failed to account. The defendant is therefore guilty of a breach of the contract, which entitles the plaintiff in any event to nominal damages. Moreover, if it be regarded as an action at law, a recovery of the commissions to which the plaintiff is entitled will not contravene the provisions of said section 1207 of the Code of Civil Procedure, for the judgment demanded is for the amount due the plaintiff, to be ascertained in accordance with the provisions of said contract. It is also quite clear that the defendant, having seen fit to allow judgment to go by default, cannot be heard to claim that the plaintiff is not entitled to an accounting, which it by the contract expressly stipulated to give him. The court has merely decreed what the defendant contracted to give. It is a peculiar contract. The plaintiff is not suing for commissions in the ordinary sense. With the exception of the provision with respect to part payment, he is entitled to recover only after the defendant has been paid under each contract upon which he is entitled to commissions; and the contract is capable of the construction that the plaintiff was to have part of the money received by the defendant, and not an amount equal thereto. That would explain the provision by which defendant agreed to account to the plaintiff. There is no merit, therefore, in any of these preliminary contentions made by the appellant.

The real question presented by the appeal is whether the recovery was warranted by the evidence. We have not been materially aided by the briefs in deciding the questions already discussed, and with respect to the facts the briefs fail to point out by folio references, as required, the evidence in support of the respective contentions. The referee found that the plaintiff was entitled to commissions, aggregating $1,864.35, on the amounts received by the defendant under 31 contracts. It may well be that, by the omission to incorporate in the interlocutory judgment, the provisions of the contract with respect to the reports in writing or slips and acceptances, the referee was misled, for it appears that in some instances he has allowed commissions in disregard of those provisions of the contract.

The defendant filed an account with the referee, to which the plaintiff interposed objections. The account filed showed that the plaintiff was entitled to commissions on 10 items, but that he had been paid in full therefor, with the exception of $1.92, being a balance of commissions due on one of them. The referee sustained the account as to commissions with respect to the items specified therein, with the exception that, in addition to the conceded balance of $1.92, he found

that a payment of $85 on another item, claimed to have been in full, was not in full, and that the plaintiff was entitled to further commissions thereon, which aggregate $72.74. The referee also allowed the plaintiff commissions on 30 other contracts or jobs, none of which were shown in the account filed by the defendant.

On the contract designated No. 79, the referee allowed commissions which aggregate $72.42. That was for work on the Comedy Theater. Neither the name of the architect, nor of the contractor, appeared in Schedule S; nor were the conditions shown to exist which would entitle their names to be deemed added thereto under the contract; and the plaintiff did not procure or solicit the work, or make a report in writing, or hand in a slip, or procure the acceptance of a slip, with respect thereto.

[7-9] The plaintiff was also allowed commissions on contracts Nos. 58, 70, 71, 72, 83, 89, 92, 96, 97, 100, 101, 102, 106, 110, 112, 116, 120, 125, 126, 127, 128, 129, and 131, aggregating, as I figure it, $791.-30. He failed to show that he procured these contracts; and with respect to most of them the evidence affirmatively shows that he failed to procure a slip to be signed by the defendant, and with respect to the others he failed to show by satisfactory evidence that he procured a slip to be signed. If the work was let by any of the parties named in Schedule S, or by their principals, or by any of the parties whose names the plaintiff would be entitled, under the provisions of the contract, to have added to Schedule S, it was necessary for the plaintiff to show that he made a report, stating the commissions claimed, and procured the acceptance thereof by the defendant, which, in effect, is what was intended by the slip mentioned in the contract; but in such instances it was not incumbent upon him to show that he *negotiated* the contracts. He was, however, entitled to commissions, without procuring the signing of a slip, upon moneys received pursuant to contracts negotiated by him, at the rates specified in the report made by him on procuring them.

He was also allowed commissions aggregating $258.92 on contract No. 114. With respect to that contract he showed that he procured two slips to be signed by defendant on the 31st of October 1907, to the same effect, excepting that they bore different dates; but they specified only the name of the owner for whom the work was to be done. He procured two other slips to be signed for this work, under date of "April," 1909. One of these was signed by the defendant, "Accepted, for owner only;" but the evidence does not clearly show which was signed last, and, if the one without limitation was signed last, the plaintiff's testimony shows that he failed to disclose to the defendant his purpose in procuring it to be signed, which was to remove the limitation, "Accepted, for owner only," and therefore it cannot be said that the defendant intended to sign the slips without limitation. Moreover, the plaintiff's claim for commissions on this work is based upon the fact that the name of the architect was on Schedule S. The theory on which the defendant accepted the slip *for owner only* was that it expected that the work would be let by a firm of contractors with whom it had relations, and from whom it could obtain an invitation to submit a proposal, and it only intended to obligate itself

to plaintiff in the event that the proposals were invited by the owner or the architect whose name was on Schedule S. I am of opinion that the claim of the defendant with respect to the construction of the contract in this regard was well founded, and that it would not be liable for commissions if the work was let through the contractor, whose name was not on, or entitled to be on, Schedule S, even though for an owner employing an architect named in Schedule S, where neither the architect nor the owner took part in letting the work.

The evidence satisfactorily shows that the plaintiff was entitled to the other commissions recovered, either on the ground that the work was done through one of the parties named on Schedule S, or whose name the plaintiff was entitled to have deemed added thereto, or his principal, and that he procured slips to be accepted by the defendant therefor, or on the ground that he was instrumental in procuring the particular contract.

[10] If there shall be a new trial, a question may arise, as it did arise before the referee, with respect to whether the plaintiff is entitled to have the name of an architect or contractor, through whom he had procured business for the defendant, or permission to estimate for the defendant, prior to the execution of the contract in suit, but whose name is not on Schedule S, deemed added thereto. Manifestly there is no merit in that contention, fór when the contract was made the parties, by Schedule S, named and defined those who were to be regarded as plaintiff's customers, and he is limited and confined by that schedule with respect to then existing or past customers.

If, therefore, the plaintiff sees fit to stipulate to reduce his recovery by the items we found he has not shown a right to recover, and interest thereon, the judgment will be modified accordingly, and affirmed, without costs; but otherwise it should be reversed, and a new trial granted before another referee, to be named in the order, with costs to the appellant to abide the event. All concur.

---

(164 App. Div. 825)

### In re SOUTHWORTH et al.

(Supreme Court, Appellate Division, Second Department. December 11, 1914.)

1. POWERS (§ 36*)—EXECUTION—SUPERVISION BY COURTS.

   Where the power of dividing the residuary estate among named charities vested in the executors in their discretion by the will has been honestly exercised, the court will very rarely interfere therewith, even though it does not agree with the wisdom of the apportionment.

   [Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.*]

2. POWERS (§ 36*)—EXECUTION—BAD FAITH.

   The mere fact that the appointors under a testamentary power have gained an incidental benefit from their appointment does not show bad faith, in the absence of a showing that they would not have made the same appointment if it were not for the benefit.

   [Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes